ROSEMARY LEDET, Judge.
| plaintiff, FMC Enterprises, L.L.C. (“FMC”), appeals the trial court’s final judgment rendered on August 8, 2012, including the interlocutory judgments rendered in this action on August 15, 2011 and February 28, 2012, which all were found in favor of defendant, Prytania-St. Mary Condominiums Association, Inc. (“PSMCA”). For the following reasons, we affirm.

FACTUAL BACKGROUND

On June 6, 2006, FMC, represented by its members Jacob Garofalo and F. Thomas Crowley, Jr., agreed to purchase an apartment building containing four apartments located at 1916-1922 Prytania Street, New Orleans, Louisiana (the “Pry-tania Street Building”) from Prytania Historic Properties, LLC (“PHP”), represented by its members Christian Amedee and Ian Hardcastle. At the time, PHP owned the Prytania Street Building and two other adjacent apartment buildings on St. Mary Street. The three buildings contained a total of 23 apartments.
| ¡.Before the sale of the Prytania Street Building to FMC, PHP decided to turn the three buildings it owned into a condominium regime. On July 24, 2006, the PSMCA was created by the condominium regime’s Act of Declaration (“the PSMCA Declaration”). The PSMCA consisted of 23 units; the 23 apartments, contained in the three buildings. On September 1, 2006, instead of purchasing the entire Prytania Street Building as originally agreed, FMC purchased only the four condominium units in the building.
Following the sale, FMC began to renovate its four units. FMC asserts that they also performed significant work to the common elements of the Prytania Street Building, including rewiring 90% of the electrical system; replacing the plumbing; building exterior stairways, porches and roofs over the porches; repairing the roof of the main building; and removing and replacing approximately 20% of the exteri- or siding.
Shortly after renovations began, FMC discovered a small access panel in the ceiling of Unit 1918 of the Prytania Street Building. The access panel led to an unframed, floorless attic space. FMC deter *221 mined that there was sufficient space in the attic for it to be converted into an additional condominium unit if a permanent means of access to the space was created, the space was framed, floors were laid, and electricity and plumbing were installed.
Mr. Garofalo approached Mr. Amedee, the then-president of the PSMCA, about the possibility of adding a fifth unit to the Prytania Street Building, which would make the PSMCA a 24-unit condominium regime. FMC proposed creating |sa fifth unit by converting and renovating the newly found attic space and constructing a set of stairs to be built for the purpose of accessing the unit.
At that time, PHP and FMC owned all 23 units; they represented 100% of the unit owners of PSMCA. PHP and FMC orally agreed that in exchange for the work FMC was doing to renovate PSMCA’s common elements, PSMCA would transfer ownership of the attic space, the fifth unit, to FMC and amend the condominium documents to reflect this agreement and provide for an additional 24th unit to the condominium regime. Following the agreement between PHP and FMC, FMC asserts that it took possession of the attic space and began to convert it into a condominium unit. However, the amendment to the PSMCA Declaration was never filed. FMC asserts that they became aware that the declaration was never amended in 2009 when it neared completion of conversion of the attic space into a unit, and began marketing it for sale.
Since June 2010, FMC has been leasing the attic space as Unit 1918-A. However, PSMCA told FMC that the PSMCA Declaration will not be amended. Further, PSMCA has attempted to evict FMC and its tenant from the unit, cancel the insurance on the unit, and has indicated that it has no intent of transferring title of the unit to FMC.

PROCEDURAL BACKGROUND

On October 12, 2010, FMC filed a Petition for Damages or Alternatively Transfer of Ownership. FMC asserted in its petition causes of action for reimbursement for construction by a good faith possessor, failure to pay for 1,(improvements to the common elements of the PSMCA, breach of contract to create a unit and transfer of ownership, and defamation.[1] On April 28, 2011, PSMCA filed its answer and a recon-ventional demand against FMC.
FMC seeks review of the trial court’s ruling on several summary judgments that were filed in this case. First, on June 15, 2011, PSMCA filed a Motion for Partial Summary Judgment seeking to have FMC declared a bad faith possessor of the attic space. PSMCA’s motion argued that FMC does not possess the attic space pursuant to an act translative of ownership and that FMC knew or should have known the defects of its alleged ownership in the attic space. Following oral argument on the matter, the trial court, on August 15, 2011, granted PSMCA’s motion and declared FMC a possessor in bad faith of the attic space.
Second, on December 5, 2011, PSMCA filed a Motion for Partial Summary Judgment seeking dismissal of FMC’s claim for the cost or value of any improvements it allegedly made to the common elements of the Prytania Street Building and dismissal of FMC’s claim for breach of contract or under any theory by which it is asserting title to the attic space. In response, FMC filed a Motion for Partial Summary Judg- *222 merit and Motion for New Trial and/or Reconsideration of the trial court’s August 15, 2011 judgment.
On January 6, 2012, Judith Hembling, John Hembling, Judith Law, and David Turgeon (collectively referred to as “the Intervenors”) intervened in the proceeding to defend their ownership in the attic space as a common element of the 1 fiPSMCA. Subsequently, the Intervenors filed a motion in opposition to FMC’s Motion for Partial Summary Judgment setting forth an argument under the Public Records Doctrine.
On February 9, 2012, the trial court heard both PSMCA’s and FMC’s motions. On February 28, 2012, the trial court granted PSMCA’s Second Motion for Partial Summary Judgment and denied FMC’s Motion for Partial Summary Judgment and Motion for New Trial and/or Reconsideration of the trial court’s August 15, 2011 order.
Third, on April 25, 2012, PSMCA filed its third and last Motion for Summary Judgment seeking a dismissal of the suit and requesting FMC to be ordered to remove any tenant it has in the attic space and to demolish the improvements made to the attic space. Following a hearing on PSMCA’s third summary judgment, the trial court rendered a final judgment on August 8, 2012 dismissing FMC’s suit against PSMCA in its entirety with prejudice. The trial court further ordered FMC to remove its tenant; however, the judgment indicates that PSMCA agreed to refrain from demolishing or demanding demolition of improvements made to the attic space by FMC pending resolution of the instant appeal.

STANDARD OF REVIEW

Appellate courts review the grant or denial of a motion for summary judgment de novo, using the same criteria applied by the trial courts to determine whether summary judgment is appropriate. Roach v. Kamath, 02-1309, p. 4 (La.App.6 4 Cir. 12/30/02), 837 So.2d 118, 120. The summary judgment procedure is designed to secure the just, speedy, and inexpensive determination of actions. Harvey v. Francis, 00-1268, p. 1 (La.App. 4 Cir. 3/21/01), 785 So.2d 893, 895. The procedure is favored and shall be construed to accomplish these ends. Id.; La. C.C.P. art. 966 A(2). A summary judgment shall be rendered if the pleadings, depositions, answers to interrogatories, and admissions, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that the mover is entitled to judgment as a matter of law. Id.; La. C.C.P. art. 966 B(2).
For purposes of summary judgment, a “genuine issue” is a triable issue, or one as to which reasonable persons could disagree. 1026 Conti Condominiums, LLC v. 1025 Bienville, LLC, 11-1055, p. 5 (La.App. 4 Cir. 2/8/12), 84 So.3d 778, 781. If on the state of the evidence, reasonable persons could reach only one conclusion, there is no need for a trial on that issue. Smith v. Our Lady of the Lake Hosp., Inc., 93-2512, p. 27 (La.7/5/94), 639 So.2d 730, 751 (citing W. Schwarzer, Summary Judgment Under the Federal Rules: Defining Genuine Issues of Material Fact, 99 F.R.D. 465, 481 (1983)).
A fact is “material” when its existence or nonexistence may be essential to the plaintiffs cause of action under the applicable theory of recovery. Id. Material facts may insure or preclude recovery, affect a litigant’s ultimate success, or determine the outcome of the legal dispute. Id. (citing South Louisiana Bank v. Williams, 591 So.2d 375, 377 (La.App. 3d Cir.1991)). Any doubt as to a dispute regarding a material issue of fact must be *223 resolved against granting the motion and |7in favor of a trial on the merits. Windham v. Murray, 06-1275, p. 3 (La.App. 4 Cir. 5/30/07), 960 So.2d 328, 331.

DISCUSSION

FMC asserts five assignments of error on appeal.[2]
First we will address FMC’s assignment of error that the trial court committed legal error by granting PSMCA’s first Motion for Partial Summary Judgment and finding that FMC was a bad faith possessor of the attic space.
To be a possessor in good faith of the attic space, FMC would have to meet the two requirements set forth in La. C.C. art. 487, which provides that a possessor is in good faith when he: 1) possesses by virtue of an act translative of ownership, and 2) he does not know of any defects in his ownership. Further, La. C.C. art. 487 explains that a possessor ceases to be in good faith when these defects are made |sknown to him or an action is instituted against him by the owner for the recovery of the thing.
Regarding the first requirement of good faith possession under La. C.C. art. 487, FMC asserts that the act translative of ownership that they possess is a sale through oral transfer of the attic space. PSMCA counters that FMC does not possess the attic space pursuant to an act translative of ownership because there is no written acts of sale or title whose terms purport to transfer ownership of the attic space to FMC. It notes that FMC has admitted this fact.
Examples of acts translative of ownership are sales, donations, or exchanges of property. La. C.C. art. 487 cmt. b.; La. C.C. art. 517 cmt. c. FMC asserts that a written contract is not always a prerequisite to the transfer of ownership of an immovable. FMC cites to La. C.C. art. 1893, which provides that:
A transfer of immovable property must be made by authentic act or by act under private signature. Nevertheless, an oral transfer is valid between the parties when the property has been actually delivered and the transferor recognizes the transfer when interrogated on oath.
An instrument involving immovable property shall have effect against third *224 persons only from the time it is filed for registry in the parish where the property is located.
(Emphasis supplied). Further, La. C.C. art. 2440 states that a sale of an immovable must be made by authentic act or by an act under private signature, except as provided in La. C.C art. 1893.
The first requirement of a valid oral transfer of immovable property, actual delivery, means that the immovable which is the object of the verbal sale has in fact been transferred or placed into the possession of the buyer. Martin v. Brister, 937,011, p. 3 (La.App. 2 Cir. 7/23/03), 850 So.2d 1106, 1110. A determination of whether actual delivery of an immovable has been made depends on the circumstances of each individual case. Id., 37,011 at pp. 3-4, 850 So.2d at 1110. FMC assets that the attic space was delivered pursuant to La. C.C. art. 1839 because they took possession of the space and began the conversion process following the agreement of all unit owners of PSMCA at that time.
Even assuming there was actual delivery of the attic space, FMC must also show acknowledgment of the oral sale by the contesting parties under oath. Mitchell v. Clark, 448 So.2d 681, 685 (La.1984). The answers of a party when interrogated under oath supply the place of written proof. Id. FMC argues that PSMCA filed this motion for partial summary judgment during the initial stages of discovery, before any depositions were taken or affidavits obtained. FMC notes that the only evidence PSMCA cited to in support of its motion was FMC’s Petition and FMC’s response to PSMCA’s Requests for Admission, in which FMC states that it believed it was the owner of the attic space and was therefore a good faith possessor. FMC further notes that at the time the summary judgment was filed, the parties were attempting to schedule depositions of members of FMC and PHP. Thus, FMC argues that the trial court’s ruling granting summary judgment was premature.
Pursuant to La. C.C.P. art. 966, a defendant may move for summary judgment “at any time.” Gunter v. Jefferson Davis Parish, 11-1018, p. 4 (La.App. 3 Cir. 2/1/12), 84 So.3d 705, 708 (quoting La. C.C.P. art. 966 A(1)). Article 966 hnfui-ther provides that either the plaintiff or defendant in the principal or any incidental action, with or without supporting affidavits, may move for a summary judgment in his favor for all or part of the relief for which he has prayed. Thus, summary judgment may be considered even before the parties have completed discovery. Jeanmarie v. Peoples, 09-1059, p. 8 (La.App. 4 Cir. 3/16/10), 34 So.3d 945, 951. While parties should be given a fair opportunity to present their claim, there is no absolute right to delay a motion for summary judgment until discovery is completed. Id., 09-1059 at pp. 8-9, 34 So.3d at 951. Whether to grant a continuance to allow for further discovery is within the trial court’s “wide” discretion and should only be reversed upon a showing of an abuse of that discretion. Id., 09-1059 at p. 9, 34 So.3d at 951 (quoting Chatman v. Thor Offshore Boat Service, Inc., 410 So.2d 784, 786 (La.App. 4th Cir.1982)).
Based on FMC’s foregoing arguments, we agree that there is an absence of discovery regarding the first requirement of good faith possession and whether FMC possesses in good faith by virtue of an act translative of ownership. However, the trial court’s ruling granting summary judgment was based on the second requirement of good faith possession— whether FMC knew of any defects in its ownership of the attic space. In open court, the trial judge explained that “it seems to me that FMC knew, or should *225 have known, that PHP did not have the authority to transfer ownership.”
On this motion for summary judgment, PSMCA’s burden of proof does not require it to negate all essential elements of FMC’s claim but rather to point out to Lithe court that there is an absence of factual support for one or more elements essential to FMC’s claim. Huber v. Liberty Mut. Ins. Co., 00-0679, p. 5 (La.App. 4 Cir. 2/7/01), 780 So.2d 551, 554. Thereafter, if FMC fails to produce factual support sufficient to establish that it will be able to satisfy its evidentiary burden of proof at trial, then there is no genuine issue of material fact. Id.
PSMCA argues that FMC knew or should have known of defects in its alleged ownership of the attic space. First, PSMCA argues that FMC should have known that PHP did not have the authority to transfer ownership of the attic space based on the PSMCA’s Declaration.
The Louisiana Condominium Act provides that absent certain exceptions, which do not apply to the instant case:
[T]he percentage of undivided interest of such unit owner in the common elements of the condominium as expressed in the condominium declaration shall be an inseparable component of the ownership of the unit and shall not be altered without the consent of all the unit owners expressed in an amended condominium declaration duly filed for registry.
The common elements shall remain undivided and shall not be subject to partition, except with respect to that part or all of the condominium property that has been withdrawn from the provisions of this Part.
La. R.S. 9:1122.108. Thus, common elements must remain undivided unless there is consent from all condominium unit owners expressed in an amended condominium declaration duly filed for registry, or the common element is withdrawn from the condominium regime. Further, the Louisiana Condominium Act provides that the condominium declaration and by-laws have the force and effect of law between the individual unit owners. Person v. 2434 St. Charles Ave. 12Condominium Ass’n, 11-1097, p. 3 (La.App. 4 Cir. 3/7/12), 88 So.3d 679, 681 (quoting La. R.S. 9:1124.115(A)).
PSMCA Declaration establishes 23 units. It states that ownership of a residential unit shall include an undivided percentage interest in the common elements. Common elements, as defined in the PSMCA Declaration, are all portions of the condominium property, whether movable or immovable, that is not contained within the boundaries of any of the individual units.
PSMCA argues that there is no authorization pursuant to the PSMCA Declaration to create a new unit out of a common element and transfer ownership of that new unit by an oral agreement. PSMCA notes that to perform an action outside of what is specifically authorized in the PSMCA Declaration, certain procedures must be followed to amend the PSMCA Declaration. This never occurred in this case. However, FMC argues that Mr. Amedee was specifically granted all of the power and authority to do any and all acts described in the PSMCA Declaration. FMC relies on Article III(iv)(d) of the PSMCA Declaration as the authority that granted PHP the power to transfer its ownership interest in the attic to FMC. Article III(iv)(d) of the PSMCA Declaration provides that:
Notwithstanding any other provision of this Declaration to the contrary, the De-clarant reserves the right, without the consent of the Association or any other Unit Owner, to construct and create, subdivide, or change the interior design *226 and arrangement of and create additional Limited Common Elements or Common Elements out of, any of the Units described on the Building Plan (including, without limitation, the alteration of walls between Units) so long as the Declarant owns the affected Unit or Units at the time such creation, construction or alteration occurs.
|,3Article III(iv)(d) of the PSMCA Declaration authorizes the re-designation of a unit into limited common elements or common elements; it does not authorize the re-designation of a common element into a unit, which is what the alleged oral agreement between FMC and PHP was intended to do. Further, there are no provisions in the PSMCA Declaration or By-laws that specifically authorize the re-designation of a common element into a unit.
The Fifth Circuit addressed a similar issue in Western v. Chardonnay Village Condominium Ass’n, Inc., 519 So.2d 243 (La.App. 5th Cir.1988). The plaintiff, a condominium owner, filed suit to enjoin the condominium association from shutting off its unit’s water supply for failure to pay past due assessments for common expenses. The trial court granted the owner’s preliminary injunction restraining the association from discontinuing water service. Id. at 244. On appeal, the Fifth Circuit found that there was nothing in the Revised Statutes, Condominium Declaration, By-laws, Regulations, or Articles of Incorporation which, on its face, authorizes the condominium association to take such action. Id. at 245. The court found that if the association was to take some action beyond the scope of those specifically authorized, it was obliged to do so by proper proceedings, such as, amending the Declaration or By-laws. Id.
In the instant case, FMC asserts that the then-unit owners of PSMCA orally agreed to convert the attic space, a common element, into a unit and to transfer ownership of the attic space to FMC. However, PSMCA argues that those actions are not authorized in the PSMCA Declaration or By-laws. PSMCA notes that its | ^Declaration establishes the number and dimensions of each unit in the condominium. It argues that to create a new unit out of a common element, which is beyond the scope of what is authorized in the PSMCA Declaration, similar to the issue in the Western case, requires amendment to the PSMCA Declaration. We agree.
PSMCA Declaration Article XIV(3) provides the procedure to amend the Declaration in this case. It states that:
(a) Notice of the subject matter of the proposed amendment in reasonably detailed form shall be included in the Notice of any meeting of the membership of the Association at which a proposed amendment is to be considered.
(b) A resolution for adoption of a proposed amendment may be proposed by either the Board or by Unit Owners holding at least ten percent (10%) percent of the voting power of the Association. Directors and Owners not present at the meeting considering such amendment may express their approval by written consent or by proxy and no meeting need be held if a written consent to an amendment is signed by all members, all as provided in the Association By-Laws. Approval by at least sixty-seven (67%) percent of the votes of the Association shall be required for any such amendment.
(c) The amendment shall be effective when registered in the Conveyance Office of Orleans Parish, Louisiana. Copies of the amendment shall be delivered to each Owner but such *227 delivery shall not be a condition precedent to the effectiveness of such amendment.
None of the formalities required to amend the PSMCA Declaration are alleged to have occurred in this case, such as, notice of the proposed amendment, a membership meeting, or registration of the amendment in the Conveyance Office of Orleans Parish. The PSMCA Declaration also states that even if the formalities of a meeting are not needed, there must be consent in writing to an amendment that |1Bis signed by all members, all as provided in the PSMCA By-laws Article 11(11), which state:
Whenever, by any provision of law, the Condominium Declaration, the Articles of Incorporation, or these By-laws, the affirmative vote of members is required to authorize or constitute action by the Association on behalf of the condominium regime, the consent in writing to such action, signed by all of the members having voting power in the particular question, shall be sufficient for the purpose, without necessity for a meeting of the members. The consent, together with a certificate by the Secretary of the Association to the effect that the subscribers to the consent constitute all of the members entitled to vote on the particular question, shall be filed with the records of the proceeding of the members.
Action by the PSMCA, absent a meeting of the members, requires written consent signed by all members, filed with the records of the proceeding of the members, along with a certificate by the secretary of PSMCA, which was not done in this case.
The rules of contract interpretation apply to the interpretation of a condominium declaration. Cusimano v. Port Esplanade Condo. Ass’n, Inc., 10-0477, p. 8 (La.App. 4 Cir. 1/12/11), 55 So.3d 931, 936. When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties’ intent. Id. (quoting La. C.C. art.2046).
The Declaration and By-laws are the governing documents for PSMCA, which clearly provide the procedure to amendment its terms. As stated, the Declaration and By-laws have the force and effect of law between the individual unit owners. Based on the foregoing, FMC knew or should have known that the proper procedure was not followed to create a new unit out of a common element |1fiand transfer ownership of that new unit. Therefore, FMC knew or should have known of defects in its alleged ownership of the attic space. We find no error in the trial court’s judgment granting PSMCA’s Motion for Partial Summary Judgment and declaring FMC a possessor in bad faith of the attic space.
In FMC’s next assignment of error, it contends that the trial court committed legal error by granting PSMCA’s first Motion for Partial Summary Judgment and finding that FMC was a bad faith possessor of the attic space because summary judgment is inappropriate for the determination of subjective facts such as knowledge, intent, and good faith, which are questions of fact for determination by the jury after a trial on the merits.
Summary judgment is rarely appropriate for a determination based on subjective facts such as intent, motive, malice, knowledge or good faith. Quinn v. RISO Investments, Inc., 03-0903, p. 6 (La. App. 4 Cir. 3/3/04), 869 So.2d 922, 927. One reason summary judgment is seldom used for the determination of subjective facts is because it calls for credibility evaluations and the weighing of testimony. Louisiana AG Credit, PCA v. Livestock *228 Producers, Inc., 42,072, p. 12 (La.App. 2 Cir. 4/4/07), 954 So.2d 883, 891. Additionally, the circumstantial evidence usually necessary for proof of motive or intent requires the trier-of-fact to choose from competing inferences, a task not appropriate for a summary judgment ruling. Id.
Nevertheless, Louisiana jurisprudence has held that a motion for summary judgment based on knowledge or good faith is appropriate when there is no issueJjjof material fact concerning the pertinent intent. Haney v. Delta Petroleum Co., Inc., 01-0636, p. 5 (La.App. 4 Cir. 3/6/02), 811 So.2d 1200, 1203; Jones v. Estate of Santiago, 03-1424, p. 6 (La.4/14/04), 870 So.2d 1002, 1006 (quoting Smith, 93-2512 at p. 28, 639 So.2d at 751). Summary judgment is not precluded as a matter of law when the issue is one concerning knowledge or intent; rather it depends on the particular facts presented in the documentary evidence accompanying the motion. Id. Even in cases where elusive concepts such as motive or intent are at issue, summary judgment may be appropriate if the non-moving party rests merely upon conclusory allegations, improbable inferences, and unsupported speculation. Id.
PSMCA citied to provisions in the PSMCA Declaration to support its first Motion for Partial Summary Judgment to show knowledge of the unit owners. The PSMCA Declaration has the force and effect of law between the unit owners, and it is clear as to the procedure to amend to its terms. FMC, however, provided no evidence in support to its claim of good faith other than conclusory allegations in its petition. Additionally, the trial court did not have to make credibility evaluations or weigh testimony, which would have been inappropriate on summary judgment. Thus, we find FMC’s assignment of error unpersuasive.
In FMC’s next assignment of error, it contends that the trial court committed legal error by denying its Motion for Partial Summary Judgment and Motion for New Trial and/or Reconsideration of the trial court’s August 15, 2011 judgment, which held that FMC is a possessor in bad faith of the attic space. FMC’s Motion 118for Partial Summary Judgment sought a declaration that it was either a lawful owner or a good faith possessor of the attic space.
FMC again notes that when the trial court heard PSMCA’s first Motion for Partial Summary Judgment and held that FMC is a possessor in bad faith of the attic space, the case was in its initial stages of discovery and no depositions had been taken. When FMC filed the instant motion, further discovery had been taken. FMC attached as exhibits affidavits from Mr. Amedee, Mr. Garofalo, and Mr. Hard-castle, who attested that PHP and FMC agreed to the transfer of ownership of the attic space to FMC and to the conversion of the attic space into a fifth condominium unit of the Prytania Street Building. Additionally, FMC provided excerpts from depositions of Mr. Garofalo, Mr. Crowley, and Mr. Amedee, in which they testified to the same oral agreement.
FMC argues that affidavits and deposition testimony reflect that it was 100% of the PSMCA unit owners that agreed to create a fifth unit in the Prytania Street Building from the attic space and to transfer ownership of that space to FMC. FMC notes that Article XIV(3) of the PSMCA Declaration permits unit owners to make any amendments to the Declaration upon agreement or approval by at least 67% percent of the owners. However, the percentage of unit owner approval to amend the Declaration is not the only requirement proved in Article XIV(3) of the PSMCA Declaration.- As discussed, FMC *229 has not made a showing that the other requirements were met, including: 1) notice of the proposed amendment; 2) a resolution of the proposed amendment considered at a membership meeting; 3) if 11sno meeting is needed, written consent of the amendment in writing as provided in the PSMCA By-Laws; and 4) registration of the amendment in the Conveyance Office of Orleans Parish.
There is neither statutory authority nor authority under the PSMCA Declaration and By-laws that authorizes unit owners to orally agree to create a new unit out of a common element or to orally agree to transfer ownership of a common element. As stated, if a unit owners’ association wishes to take some action beyond the scope specifically authorized by the condominium declaration or by-laws, it either must amend the declaration or amend the by-laws to that effect. Western, 519 So.2d at 245. The steps necessary to amend the PSMCA Declaration or By-laws were not taken in this case. Although the then-unit owners orally agreed to create a fifth unit out of the attic space and to transfer ownership to FMC, they did not take the proper actions required to accomplish that result. Thus, the attic space was never legally re-designated as a fifth unit in the condominium regime, and ownership of the attic space was not transferred to FMC.
Additionally, in opposing to FMC’s motion, the Intervenors asserted that because the alleged oral transfer of the attic space was not recorded in the public records, it could not affect the Intervenors’ interest in the common element space they obtained through a recorded sale, which granted them ownership of their individual units and a percentage interest in the common elements of the PSMCA pursuant to the Public Records Doctrine.
12pMr. Crowley testified that the PSMCA Declaration had been provided to the purchasers- of the four units of the Prytania Street Building and that the PSMCA Declaration, which was registered in the Conveyance Office of Orleans, stated that there were 23 units in the condominium regime. -
The Louisiana Public Records Doctrine, codified in La. C.C. art. 3338, expresses a public policy that interest in immovable property must be recorded in order to affect third persons. Cimarex Energy Co. v. Mauboules, 09-1170, 09-1180, 09-1194, pp. 18-19 (La.4/9/10), 40 So.3d 931, 943-44. The Intervenors note that FMC’s claim to ownership of the common attic space is based on an alleged oral agreement between FMC and PHP pursuant to La. C.C. art. 1893. However, the Intervenors point out that comment (b) to La. C.C. art. 1893 states that the article does not change the scheme contained in the statutes governing recordation, or the jurisprudence thereunder. Therefore, the Intervenors argue that even if this court were to find that there was a valid oral -transfer between FMC and PHP, the transfer would only be valid between the parties to the agreement. We agree. However, we also hold that there was not a valid transfer of ownership of the attic space to FMC, or a re-designation of the attic space as a fifth unit in the condominium regime because the proper steps to conduct such actions were not taken in the instant case. For the foregoing reasons, we conclude that the trial court correctly denied FMC’s Motion for Partial Summary Judgment, which sought to declare it as the owner of the attic space.
|2iln the alternative FMC request a new trial and/or reconsideration of the trial court’s August 15, 2011 judgment, which held that FMC is a possessor in bad faith of the attic space. FMC asserts that it is *230 entitled to summary judgment declaring it to be a possessor in good faith. As stated, La. C.C. art. 487 states that a possessor is in good faith when he possesses by virtue of an act translative of ownership and does not know of any defects in his ownership.
FMC notes that testimony from the members of FMC and PHP indicates that they orally agreed to transfer ownership of the attic space to FMC and to convert the attic space to a fifth condominium unit in the Prytania Street Building. However, as discussed earlier, this court has determined that although the then-unit owners orally agreed to create a fifth unit out of the attic space and to transfer ownership to FMC, they did not take the appropriate steps by properly amending the PSMCA Declaration or By-laws. Thus, there was no valid oral agreement.
Even if FMC could have proven that there was a valid oral agreement, it has not made a showing that it was not aware of any defects in its ownership of the attic space. FMC asserts that it was not aware of any defects in its ownership of the attic space until it tried to sell it as a unit in the PSMCA. FMC also asserts that it believed that the new unit owners of the PSMCA were aware of, and consented to, the building of the fifth unit in the Prytania Street Building.
First, FMC does not address the fact that the steps necessary to transfer ownership of the attic space and to convert it into a unit were not actually taken. Those steps are outlined in the PSMCA Declaration and the By-Laws, which ^constitute the law between FMC and PHP. There is no authorization to orally agree to transfer ownership of a common element or authorization to orally agree to convert a common element into a unit. PSMCA provided excerpts of Mr. Crowley’s deposition, in which he testified that he read and had a copy of the PSMCA Declaration. He also testified that he knew he was bound by the PSMCA Declaration. Thus, FMC had full knowledge of the terms of the PSMCA Declaration and the procedure to amend its terms, which was not fulfilled in this case. Therefore, we conclude that the trial court correctly denied FMC’s Motion for New Trial and/or Reconsideration of the trial court’s August 14, 2011 order, which held that FMC is a possessor in bad faith of the attic space.
In FMC’s next assignment of error, it contends that the trial court committed legal error by granting PSMCA’s Second Motion for Partial Summary Judgment. PSMCA’s Second Motion for Partial Summary Judgment sought a dismissal of FMC’s claim for the cost or value of any improvements it allegedly made to the common elements of the Prytania Street Building. However, in FMC’s brief, it fails to explain why the trial court erred in its decision to dismiss those claims. All specifications of error must be briefed, and the court may consider as abandoned any assignment of error which has not been briefed. Martin v. Martin, 39,631, p. 10 (La.App. 2 Cir. 5/18/05), 903 So.2d 619, 628 (citing Uniform Rules, Courts of Appeal, Rule 2-12.4). Therefore, we find that any assignment of error as to the court’s dismissal of FMC’s claim for the cost or value of any improvements it | ^allegedly made to the common elements of the Prytania Street Building is abandoned.
PSMCA’s Second Motion for Partial Summary Judgment also sought a dismissal of FMC’s claim for breach of contract or under any theory by which it is asserting title to the attic space. FMC does not brief any arguments as to its claims for breach of contract. Therefore, we will not address that portion of the trial court’s judgment. FMC does assert that it possessed the attic space by an act translative of ownership, through the oral agreement *231 it made with PHP, or, at a minimum, it claims that it is a good faith possessor of the attic space. As discussed earlier in this opinion, we have already determined that the PSMCA unit owners did not have the authority orally to create a new unit out of a common element and to transfer ownership of the attic space by an oral agreement absent an amendment to the PSMCA Declaration or By-Laws. We have also already determined that the trial court is correct in its determination that FMC was not a possessor in good faith. Therefore, we find that the trial court was legally correct in dismissing FMC’s claim for breach of contract or any other theory by which it is attempting to assert ownership of the attic space.
In FMC’s final assignment of error, it contends that trial court committed legal error by granting PSMCA’s Third Motion for Summary Judgment and dismissing its suit, which also ordered that FMC remove its tenant from the attic space. However, in FMC’s brief it does not explain how the trial court erred in its ruling. The only reference FMC makes to this trial court ruling, other than in its | ^procedural history of the case, is that “the parties did not object to the lower court’s dismissal of FMC’s suit with prejudice as a means to obtain a final judgment in the matter so as to allow FMC to file its suspensive appeal regarding the lower court’s rulings in the matter.” Therefore, we find that this assignment of error has been abandoned by FMC and will not be considered on appeal.

DECREE

For the foregoing reasons, the judgments of the trial court are affirmed.
AFFIRMED

. PSMCA reached a settlement with FMC on the defamation claim, and on April 10, 2012, the trial court dismissed this claim with prejudice.

.FMC asserts the following assignments of error:
1. The lower court committed legal error by granting PSMCA's first Motion for Partial Summary Judgment and finding, as a matter of law, that FMC was a bad faith possessor of Unit 1918-A, despite the fact that no depositions had been taken and discovery was in its initial stages.
2. The lower court committed legal error by granting PSMCA's first Motion for Partial Summary Judgment and finding, as a matter of law, that FMC was a bad faith possessor of Unit 1918-A because summary judgment is inappropriate for the determination of subjective facts such as knowledge, intent, and good faith, which are questions of fact for determination by the jury after a trial on the merits.
3. The lower court committed legal error by denying FMC’s Motion for Partial Summary Judgment seeking declaration that FMC was either the lawful owner of the attic space or, at a minimum, a good faith possessor of Unit 1918-A.
4. The lower court committed legal error by granting PSMCA's Second Motion for Partial Summary Judgment and finding, as a matter of law, that FMC was not the owner of the attic space, after considering the evidence presented in the light most favorable to FMC
5. The lower court committed legal error by granting PSMCA’s Third Motion for Summary Judgment and dismissing FMC’s suit with prejudice and ordering that any tenant of the attic space be evicted, when there were genuine issues of material fact.