STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

TODD MOREIN, ET UX.

VERSUS

ACME LAND COMPANY

**********

APPEAL FROM THE
THIRTEENTH JUDICIAL DISTRICT COURT
PARISH OF EVANGELINE, NO. 74301-A
HONORABLE GARY J. ORTEGO, DISTRICT JUDGE

**********

**ELIZABETH A. PICKETT**
**JUDGE**

**********

Court composed of Jimmie C. Peters, Elizabeth A. Pickett, and Shannon J. Gremillion, Judges.

**REVERSED AND REMANDED.**

**Mark E. Van Horn**
**Tracy M. DeGruy**
**Taggart, Morton, L.L.C.**
**1100 Poydras Street, Suite 2100**
**New Orleans, LA 70163-2100**
**(504) 599-8500**
**COUNSEL FOR DEFENDANT-APPELLANT:**
    Acme Land Company

**Andrew C. Kolb**
**Robert L. Blankenship**
**Baker, Donelson, Bearman, Caldwell & Berkowitz, P.C.**
**450 Laurel Street**
**Chase Tower North, 20th Floor**
**Baton Rouge, LA 70801**
**(225) 381-7000**
**COUNSEL FOR THIRD-PARTY APPELLEE:**
    **Cell Tower Lease Acquisitions, LLC**

**C. Brent Coreil**
**Attorney at Law**
**Post Office Drawer 450**
**Ville Platte, LA 70586**
**(337) 363-5596**
**COUNSEL FOR PLAINTIFFS-APPELLEES:**
    **Todd Morein**
    **Sandra Stagg Morein**

**PICKETT, Judge.**

Acme Land Company appeals the trial court's grant of summary judgment in favor of Cell Tower Lease Acquisitions, LLC (CTLA), dismissing Acme's third-party demand against CTLA for monies CTLA paid for the use of a communication tower built on immovable property Acme owns and monies CTLA collected from others for their use of the tower. For the following reasons, we reverse the judgment of the trial court.

## FACTS AND PROCEDURAL HISTORY

This litigation began as a possessory action filed by Todd and Sandra Morein against Acme Land Company concerning real property (the property) situated in Evangeline Parish. Acme converted the possessory action to a petitory action when it answered the Moreins' petition and asserted ownership of the property the Moreins claimed to possess. Acme also asserted reconventional demands against the Moreins and third-party claims against CTLA for trespassing on its property. Additionally, Acme contends CTLA is a bad faith possessor who owes it money CTLA realized from its use of the property.

The detailed facts and prior proceedings in this litigation pertaining to ownership of the property are detailed in *Morein v. Acme Land Co.*, 15-135 (La.App. 3 Cir. 6/3/15), 166 So.3d 1227, wherein another panel of this court reversed the trial court's grant of summary judgment in favor of the Moreins, recognizing them as owners of the disputed tract of property based on acquisitive prescription of ten years. In that appeal, the panel also granted partial summary judgment in favor of Acme "recognizing that it holds record title to the immovable property" at issue in this litigation. *Id.* at 1238.

Thereafter, the trial court denied summary judgment in favor of Acme, holding that genuine issues of material fact existed as to whether the Moreins could prove they acquired ownership of the property by ten-year good faith acquisitive prescription. Acme filed a writ with this court, asserting the trial court erred in denying its motion for summary judgment. This court reversed the trial court's judgment and dismissed the Moreins' claims for ten-year acquisitive prescription. *See Morein v. Acme Land Co.*, an unpublished writ bearing docket number 15-1178 (La.App. 3 Cir. 1/25/16), *writ denied*, 16-312 (La. 4/8/16), __ So.3d __.

The issues presented by this appeal arise from Acme's third-party demands against CTLA. The basis of those demands stems from rights acquired by CTLA from Unison Site Management, L.L.C. to use a communication transmission tower built by the Moreins on the property. On September 28, 2005, the Moreins entered into an Easement and Assignment Agreement with Unison Site Management, L.L.C. in which they granted Unison a "Communication Easement" and a non-exclusive "Access and Utility Easement" for ingress and egress to and from the "Communication Easement." The Agreement granted "an exclusive easement in, to, under and over the [p]roperty . . . for the transmission and reception of any and all wireless communication signals and the construction, maintenance, repair, replacement, improvement, operation and removal of towers, antennas." In the Agreement, the Moreins also assigned all leases they had with third parties that provided for the third parties' lease of space on the tower for their placement of antennas thereon for two-way transmissions. Unison immediately assigned the Agreement to CTLA.

In its third-party demand against CTLA, Acme asserted that CTLA collected rents and/or fees from third parties for the use of the tower, that CTLA's use of the

2

tower constitutes a continuing trespass on its property, that CTLA is a bad faith possessor, and that CTLA must compensate Acme for its trespass and/or its bad faith possession.

CTLA filed a motion for summary judgment seeking to have Acme's third-party claims against it dismissed. In its motion, CTLA asserted that Acme has not sustained any compensable damage as a result of its alleged trespass and that it is not a bad faith possessor; therefore, CTLA argued Acme has no claim against it for damages. Lastly, CTLA urged that by Acme's own allegations, CTLA has not netted a profit through its use and operation of the tower; therefore, even if it is held to be a bad faith possessor, it is not liable to Acme for any damages and entitled to be dismissed from the suit.

After a hearing, the trial court concluded that no genuine issue of material fact exists as to Acme's third-party claims against CTLA and that CTLA's actions did not result in any compensable damages. The trial court signed a judgment dismissing Acme's claims against CTLA, and Acme appealed.

## ASSIGNMENTS OF ERROR

Acme assigns five errors with the trial court's grant of summary judgment in favor CTLA dismissing its claims against CTLA:

1. The district court erred when it found CTLA had not committed a continuing trespass against Acme.

2. The district court erred when it granted summary judgment finding CTLA was not in adverse, bad faith possession of the subject wireless communications tower.

3. The district court erred when it granted summary judgment finding that a bad faith trespasser is under no obligation to restore to the landowner the civil fruits it has gathered during its continuing trespass.

3

4.  The district court erred when it granted summary judgment finding that CTLA was under no duty to restore to Acme the civil fruits derived from unlawfully exercising a legal right which belonged exclusively to Acme.

5.  The district court erred when it granted summary judgment finding a sophisticated wireless communications company owed no duty to investigate whether it was contracting with the party that owned the wireless communications tower or the land on which the tower was located.

## SUMMARY JUDGMENT

Summary judgment[1] is favored in our law and is designed to "secure the just, speedy, and inexpensive determination of every action," and "shall be construed to accomplish these ends." La.Code Civ.P. art. 966(A)(2). A motion for summary judgment shall be granted after adequate discovery "if the pleadings, depositions, answers to interrogatories, and admissions, together with the affidavits, if any, admitted for purposes of the motion for summary judgment, show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law." La.Code Civ.P. art. 966(B)(2). Further, although the burden of proof remains with the moving party, if he will not bear the burden of proof at trial on the matter presented by the motion for summary judgment, he is not required "to negate all essential elements of the adverse party's claim, action, or defense." La.Code Civ.P. art. 966(C)(2). In such case, he need only "point out . . . that there is an absence of factual support for one or more elements essential to the adverse party's claim, action, or defense." *Id.* At that point, the adverse party must produce factual support to establish that he can carry his burden of proof at trial to

---

[1] In 2012, 2013, and 2015, the legislature amended the summary judgment procedure. The date the summary judgment was motion heard by the trial court determines the applicable version of the summary judgment law. The hearing on CTLA's motion for summary judgment was heard on November 3, 2015. Accordingly, the version of La.Code Civ.P. art. 966 in effect on that date applies herein.

4

establish that no genuine issue of material fact exists. *Id*. Appellate courts review the trial court's judgment on a motion for summary judgment de novo, using the same criteria trial courts use to determine whether summary judgment is appropriate. *Supreme Servs. & Specialty Co., Inc. v. Sonny Greer, Inc.*, 06-1827 (La. 5/22/07), 958 So.2d 634.

"[I]issues pertaining to subjective facts, such as intent, knowledge, motive, malice, or good faith are usually not appropriate to a summary judgment determination." *Murphy's Lease & Welding Serv., Inc. v. Bayou Concessions Salvage, Inc.*, 00-978, 00-979, p. 6 (La.App. 3 Cir. 3/8/01), 780 So.2d 1284, 1289, *writ denied*, 01-1005 (La. 6/1/01), 793 So.2d 195. "One reason is that these subjective facts call for credibility evaluations and the weighing of testimony" that are not appropriate for summary judgment. *Edwards v. Larose Scrap & Salvage, Inc.*, 10-596, p. 3 (La.App. 3 Cir. 12/8/10), 52 So.3d 1009, 1011-12 (quoting *Brittain v. Family Care Servs., Inc.*, 34,787, p. 4 (LaApp. 2 Cir. 6/20/01), 801 So.2d 457, 460). The trier of fact is best suited to make credibility determinations because it hears and observes witnesses as they testify.

This court explained in *Morein*, 166 So.3d 1227, that although a motion for summary judgment is based on knowledge or good faith, judgment is warranted if no issue of material fact exists as to the subjective intent concerned. Furthermore, "[s]ummary judgment is not precluded as a matter of law when the issue is one concerning knowledge or intent; rather it depends on the particular facts presented in the documentary evidence accompanying the motion." *Id.* at 1238 (quoting *FMC Enterprises, L.L.C. v. Prytania-St. Mary Condominiums Ass'n, Inc*., 12-1634, p. 17 (La.App. 4 Cir. 5/15/13), 117 So.3d 217, 228). Summary judgment may be appropriate when "elusive concepts such as motive or intent are at issue . . . if the

5

non-moving party rests merely upon conclusory allegations, improbable inferences, and unsupported speculation." *Id.*

## DISCUSSION

CTLA argues in its motion for summary judgment that Acme has no claim for trespass damages because Acme's property has not been damaged. Acme does not claim that its property has been damaged but asserts that CTLA is a bad faith possessor who, pursuant to the rules of accession, must pay Acme all fees and/or rents it collected in its operation and/or use of the tower. *See* La.Civ.Code arts. 482-489. CTLA counters that the rules of accession do not apply to Acme's claims against it because it is a lessee and a lessee is a precarious possessor who is presumed to possess on another's behalf. La.Civ.Code art. 3438.

Resolution of Acme's claims against CTLA hinges on whether the Agreement is a servitude agreement or a lease. A servitude owner is a quasi-possessor of an incorporeal immovable. La.Civ.Code art. 3421; La.Civ.Code art. 470. "The rules governing possession apply by analogy to the quasi-possession of incorporeals." La.Civ.Code art. 3421.

A lease is a contract in which the lessor agrees "to give . . . the lessee[] the use and enjoyment of a thing for a term in exchange for a rent that the lessee binds himself to pay." La.Civ.Code art. 2668. A lessor and lessee can be bound by a lease even if the lessor does not own the thing he leased. La.Civ.Code art. 2674. If a lessor does not own the thing leased, he must actually possess the thing for the lease to be valid. Official Revision Comment (a) to La.Civ.Code art. 2674.

Revision Comment (d) to La.Civ.Code art. 2668 is pertinent to a determination of whether the Agreement is a lease; it explains:

6

[E]ven if the parties intended to be bound upon their agreement as to the thing and the "rent," the resulting contract may or may not be one of lease, depending again on the intent of the parties. For example, if the right intended to be conveyed has the attributes of a real right such as a personal servitude or a limited personal servitude of use, then the contract is not a lease, even though the parties used terms like "rent" or "lease." *Cf.* C.C. Art. 730 (Rev.1977).

In *Sasol North America, Inc. v. Bolton*, 12-724 (La.App. 3 Cir. 12/5/12), 103 So.3d 1267, Sasol argued that the defendants entered into an oral lease with it for a pipeline right of way and sought to enforce its right to exercise the right of way. The defendants argued that Sasol did not have an enforceable right of way because their agreement was for a servitude which must be in writing, La.Civ.Code art. 1839,[2] and they had not signed a written agreement.

A draft of the proposed agreement provided for the grant of "an easement and servitude," and the terms "right of way" and "Right of Way Agreement" were used throughout the Agreement. Noting that the proposed agreement did not use the terms "rent" or "lease," we determined that the proposed agreement constituted a servitude.

The Moreins' Agreement provides, in pertinent part: "Site Owner grants, bargains, sells, transfers[,] and conveys . . . an exclusive easement . . . ("Communication Easement")" and "obligations under [existing lease agreements with third parties for antenna sites assigned by the Moreins to Unison], together with the right to enter the [p]roperty at any time, day or night, as may be required

---

[2] Louisiana Civil Code Article 1839 provides, in pertinent part:

A transfer of immovable property must be made by authentic act or by act under private signature. Nevertheless, an oral transfer is valid between the parties when the property has been actually delivered and the transferor recognizes the transfer when interrogated on oath.

in connection with the foregoing activities and uses," and "a non-exclusive easement in, to, under and over portions of the [p]roperty . . . for ingress and egress to and from the Communication Easement."

Louisiana law has uniformly accepted that the common law "easement" is the same as the Louisiana "servitude." *Humble Pipe Line Co. v. Wm. T. Burton Indus., Inc.*, 253 La. 166, 217 So.2d 188 (1968). *See also Quibodeaux v. Andrus*, 04-766 (La.App. 3 Cir. 11/10/04), 886 So.2d 1258. The Agreement uses the terms "easement" and "grants . . . sells . . . and conveys," not the terms "lease" and "rent," with regard to the Moreins' contract with Unison. To the contrary, the Agreement uses the term "lease" to identify the Moreins' contracts with third parties for the placement of antennas on the tower, then specifies that the "easement" extends to "the portion of the [p]roperty leased by Site Owner [to third parties] under the Existing Agreements." Thus, the Agreement distinguishes itself from a lease. For these reasons, the Agreement is not a lease but a conventional grant of a "personal servitude of right of use." La.Civ.Code art. 639.

"The establishment of a personal servitude or a predial servitude results in dismemberment of ownership. These dismemberments of ownership are real rights of enjoyment, which by their nature confer direct and immediate, *although limited*, authority over a thing belonging to another person." *Faulk v. Union Pacific R.R. Co.*, 14-1598, p. 11 (La. 6/30/15), 172 So.3d 1034, 1045 (citations omitted). The Moreins physically possessed the property and built the tower on it, but they did not own the property. *Morein*, 166 So.3d 1227. Therefore, they did not have the authority to grant CTLA a servitude.

Acme argues that the property descriptions in the Agreement and the Moreins' failure to warrant their title to the property on which the tower was built

8

should have put CTLA on notice that it needed to verify that the Moreins owned the property and had the authority to grant a servitude on the property. Acme further argues that because CTLA did nothing to verify the Moreins' ownership of the property, it is a bad faith possessor.

One who possesses pursuant to "an act translative of ownership and does not know of any defects in his ownership" is a good faith possessor. La.Civ.Code art. 487. A possessor is in bad faith if defects in his ownership are made known to him. *Id*. Good faith is presumed, but the presumption can be rebutted with "proof that the possessor knows, or should know, that he is not the owner of the thing." La.Civ.Code art. 3481. Comment (b) to Article 3481 provides that "one who alleges that the possessor is not in good faith has the burden of proving his allegation."

Neither Louisiana law nor its jurisprudence requires a purchaser of real property to examine the public records, and a purchaser is not deemed to have constructive knowledge of the public records. *Thibodeaux v. Quebodeaux*, 282 So.2d 845 (La.App. 3 Cir. 1973). However, the following rule also applies to purchasers:

> [N]otice of facts which ought to excite inquiry and which if pursued would lead to knowledge of other facts operates as notice thereof. Where one who has had sufficient knowledge of the facts to put him on inquiry and fails to inquire, or one who has cause to inquire and fails to avail himself of the means and facilities at hand to inform himself of the true facts, is chargeable with all the facts which by a proper inquiry he might have ascertained.

*Id*. at 851. *See also Attaway v. Culpepper*, 386 So.2d 674 (La.App. 3 Cir.), *writ denied*, 393 So.2d 746 (La.1980). Whether notice is sufficient to require additional inquiry is gauged by the "prudent person" standard. *Maxwell v. W. B. Thompson & Co.*, 175 La. 252, 143 So. 230 (1932).

Neither Unison nor CTLA conducted a title examination before entering the Agreement. CTLA asserts that it relied on the fact that the Moreins constructed the tower as evidence that they owned the property on which it was constructed. It argues this reliance is reasonable because reasonable persons would not construct such a tower on property they do not own. This fact is just one factor to consider in determining whether CTLA is a good faith possessor.

Acme has identified other facts in the record that indicate CTLA's sole reliance on the Moreins' construction of the tower may not be reasonable. The most glaring fact is that the servitude providing CTLA ingress to and egress from the tower extends only 523.1 feet from a public road identified in the property descriptions, but the tower is situated 1100 feet from that public road. Furthermore, the Moreins only warrant in the Agreement that they are "the legal owner of indefeasible and marketable title to the Property," identified as being "more particularly described on Exhibit A attached hereto." The tower, however, is not situated on the property described in Exhibit A; it is situated on property described in another exhibit, Exhibit B-1.

These conflicting facts, together with additional facts identified by Acme, establish that a determination of whether CTLA's reliance on the Agreement and the Moreins' representations was justified are genuine issues of material fact that cannot be resolved without credibility determinations and the weighing of testimony by the factfinder. Accordingly, summary judgment is not appropriate.

Regardless of whether CTLA is found to be a good faith possessor when it executed the Agreement, once Acme asserted its third-party claims against CTLA, CTLA had notice of Acme's ownership and became a bad faith possessor at that time. La.Civ.Code art. 487. Furthermore, if the facts show that CTLA knew or

should have known of the defects in the Moreins' title to the property before Acme asserted its claims, it was a bad faith possessor at that time. *Id.*

Acme assigns error with the trial court's finding that CTLA has not committed a continuing tort. Acme appealed the trial court's grant of CTLA's motion for summary judgment, but CTLA's motion did not address the issue of continuing tort. While Acme may have argued that CTLA's actions constitute a continuing tort in opposition to CTLA's motion, that issue was not before the court for consideration, and the trial court did not address the issue of continuing tort. Accordingly, this assignment lacks merit.

Lastly, we consider CTLA's argument that, even if it is a bad faith possessor, it is entitled to summary judgment because Acme cannot carry its burden of proof on the issue of damages. Acme seeks to recover the $260,000 Unison paid the Moreins to enter the Agreement and a sum in excess of $140,000 that CTLA has been paid by third parties since it began operating the tower in 2005.

The owner of property "acquires the ownership of its natural and civil fruits." La.Civ.Code art. 483. Fruits are defined as "things that are produced by or derived from another thing without diminution of its substance." La.Civ.Code art. 551. Fruits are either natural or civil. *Id.* "Civil fruits are revenues derived from a thing by operation of law or by reason of a juridical act, such as rentals, interest, and certain corporate distributions." *Id.*

Louisiana Civil Code Article 486 provides:

> A possessor in good faith acquires the ownership of fruits he has gathered. If he is evicted by the owner, he is entitled to reimbursement of expenses for fruits he was unable to gather.

11

A possessor in bad faith is bound to restore to the owner the fruits he has gathered, or their value, subject to his claim for reimbursement of expenses.

Pursuant to La.Civ.Code art. 486, Acme is only entitled to any amounts CTLA collected less its expenses while CTLA possessed the tower, if CTLA is a bad faith possessor. CTLA asserts that Acme cannot prove its claim for damages because CTLA is entitled to recoup the $260,000 Unison paid the Moreins before Acme can recover any amount from it. CTLA was a wholly-owned subsidiary of Unison when the Agreement was confected and assigned to CTLA, but it has not shown that it paid Unison any amount for Unison's assignment of the Agreement to it. The Assignment of Servitude in which Unison assigned the Agreement to CTLA stated only that the assignment was made "[f]or good and other valuable consideration."

Acme asked CTLA in an interrogatory, "How much money did you pay to Unison Site Management, LLC or Todd and Sandra Stagg Morein for the Easement and Assignment Agreement dated September 28, 2005?" CTLA responded, in part, by explaining that it had been acquired by Global Tower Partners in 2011 and that both it and Global Tower Partners were acquired by American Tower Corporation in 2013. CTLA further responded: "Any requests for information regarding payments made in 2005 pursuant to the Easement and Assignment Agreement should be directed to Unison Management, LLC or other applicable Unison entities."

Parent and subsidiary corporations are separate entities. *Bujol v. Entergy Servs Inc.*, 03-492, 03-502 (La. 5/25/04), 922 So.2d 1113. Therefore, CTLA has failed to establish that it paid any amount to acquire the Agreement and that it is entitled to summary judgment on this basis.

12

## DISPOSITION

For these reasons, the trial court's judgment granting summary judgment in favor of Cell Tower Lease Acquisitions, LLC is reversed, and the matter is remanded for further proceedings consistent with this opinion. All costs are assessed to Cell Tower Lease Acquisitions, LLC.

**REVERSED AND REMANDED.**